May it please the Court, my name is Julie Stelzi and I'm here on behalf of the appellant Joeann Wharton. And unless the Court has questions about other issues, I intend to focus my time today on the Franks issue. The District Court here correctly found that there was a material omission that was made with reckless disregard about whether it would mislead the magistrate judge into issuing a search warrant. The issue before this Court today is what the District Court should have done next. And under the case law in other circuits, and in this circuit, and in its decisions in Tate, Coakley, and Shorter, the answer to that is clear. In a case involving a material omission under Franks, the District Court is supposed to add in the material omission and determine if it defeats probable cause. That is it. How is it not what the District Court did here? The District Court did add in what the information that was omitted, put that information in. Well, there's two responses I want to make to that, Judge Harris. Number one, the information that Mrs. Wharton submitted was not to establish just what the omission was. A large amount of that evidence was submitted to establish the agent's reckless disregard. And so certainly the evidence that the agent knew at the time that he submitted the affidavit would be relevant to whether it was a negligent omission or whether it was made with reckless disregard  But what about the actual documents, like the excerpted portion of the grand jury testimony and then the interview? Yes. So there were exhibits that were attached. And, of course, at the initial, to even get a Franks hearing, a defendant has to make a substantial showing that there was a misrepresentation on omission and it was made with reckless disregard. So in order to make its showing, we needed to submit affidavits or other showings of proof to even get the hearing. And we made this point very clearly, and there were numerous objections about the misuse of this information. Just because information is submitted to show that the agent acted with reckless disregard doesn't mean that that information should be then imported into the search warrant. Because to get to the other part of your question, Judge Harris, in terms of why the judge went beyond what is required under this Court's precedent, the Court itself identified what the material omission was in several places. At the Joint Appendix 1175, this is part of the judge's decision, this is how she characterized the material omission. The agent and prosecutor chose not to disclose to the magistrate judge ample information suggesting that the defendants resided in entirely separate areas within their modest row home. Having identified what the omission was and why it was material, because it would defeat probable cause for the upper floors of the house, and explaining that that was made with reckless disregard, that is the material omission. Instead, the judge, after two days of hearing the testimony and considering all this record, I think was trying to sift through to figure out what the actual living arrangement was and supplied in numerous facts that were not included in the search warrant. I mean, the other way to put it, right, is she just, she took the thing that had been omitted and she put it in context with the sentence that comes right after it. I mean, you're asking, you're saying that when everybody agrees, you take the information, the material omission, you add it into the search warrant. And we're just really talking about how much of, you know, what kind of context you give that information when you add it in. And wouldn't it be weird to say you take the first sentence but not the second sentence? I mean, what if, let me give you a hypothetical, what if the son had said in the interview, John and Joanne keep different rooms. What I mean by that is that they actually shared the upstairs bedroom but John also had a separate room in the basement. You're saying the first sentence comes in but not the one that starts with what I mean by that. And isn't that weird? Well, the problem, Your Honor, is yes, it's admittedly harder when you're dealing with an omission in terms of what you supply as opposed to striking and misrepresentation. But the essence of a Franks violation when we're in the omission world is that you are taking, the law enforcement officer is removing from a neutral magistrate the ability to make inferences from facts. And the officer is saying, I'm going to make inferences about these facts and assert them as if they are the unmitigated truth. And yes, there were lots of facts that were established at the hearing. It wasn't just that it suggested that the living arrangements were separate. The problem is that the judge didn't just add in the next sentence. There were actually two categories of additional information that the judge supplied. Some of those facts were arguably known to Agent Gray at the time he submitted the affidavit. Others were not. In the actual trial, the judge suppressed the information that was found in Mrs. Wharton's bedroom. That's correct, Your Honor. That was suppressed. So what's left is the information that was found in the common living area against Mrs. Wharton. Well that's not exactly true, Your Honor. But the other was suppressed. Well Your Honor, what was suppressed was, you are correct that the only area that was concedes in its brief refers to the first floor living area. That would be the kitchen, the dining room, the living room. That was not the only area that documents came in. It was also the second floor where there was a second bedroom and an office. And the documents, which a substantial number of the trial exhibits came from that area, were allowed in. I mean, wouldn't there be a presumption? We're not talking about absolute certainty, but people who are married and living under the same roof have access to at least the common area of the house. Maybe not to her bedroom, but how's the officer supposed to unravel all that? I mean, they've been married for, what, 43 years and he's interviewed them in their living room and certain as far as their mailing address and all the forms they're filling out, they were holding themselves out as a unit. And you would think that people in that kind of living arrangement would have joint access to the common areas of the house. Your Honor, I think if there were, if Agent Gray was not aware of all of the information suggesting otherwise, then it might be reasonable for an officer to rely on a general presumption that married couples living in the same house have access to the entire premises. But that's not the situation we have here. Agent Gray had ample evidence, not just what was established, not just what the judge added into the search warrant, but he had testimony in the grand children. There were statements from the granddaughters who had lived in the house. There were records from Social Security Administration indicating that there were separate units in the building. And Agent Gray conceded he was aware of this information and he chose not to disclose it because he didn't believe it. And that is not the standard. This is not a case where an officer didn't know or made an honest mistake. But he had previously interviewed the children. Yes, he had previously interviewed. So that's why he was aware, the agent was aware of this information, that Mr. Wharton lived in the basement with a locked door and used a separate entrance to access the house. Natasha and LaShawn had previously told the Agent Gray that Mr. Wharton had access to the common area? Well, Your Honor, LaShawn Wharton had apparently said in the interview that he had access to the common areas. Again, I think we can maybe interpret that to the first floor. No, but the reason... Before we start having a Frank's violation here, my concern is twofold. Number one, you don't want to discourage police officers from resorting to the warrant procedure. And the Supreme Court has repeatedly held, don't make this procedure impossibly hard. There's a warrant in this affidavit. None of it's false. There's no contention that any of it is false. To say that the officer needs to go beyond that and completely, for purposes of an affidavit and a warrant, untangle which members of a married couple living within the same house with a single mailbox, joint billing arrangements, and all the rest, you're saying, no, a policeman's got to decide exactly who has access to which rooms and which room might be off bounds. If you say you've got to go far, far down that trail, even with all the information here, that's going to be a much greater intrusion on the privacy of married couples, both the one under suspicion, but also the one who is not under suspicion here. And there wasn't anything in the affidavit at the time that mentioned Mrs. Wharton. But there are unintended consequences, and you're pushing officers away from the warrant clause, and you're pushing them into the interior of marital relations. And, you know, that's just as offensive to the spouse, to an innocent spouse, as it is to someone under suspicion, to have your privacy uprooted to that extent, if you say that what he had here was not enough. Your Honor, if I may answer the question. The problem here is that the Fourth Amendment protects individuals from unreasonable searches into their home. And the question is not that Agent Gray had the responsibility to figure this out. The point is that he had the duty to disclose this information to the magistrate judge so that she could make a determination whether there was probable cause to search the entire house. And he failed to disclose that information, and he made that with reckless disregard. You know, I dare say, I dare say that every affidavit submitted to a magistrate judge doesn't put down the whole universe of what an officer knows. I mean, they just don't. In this instance, there was a lot of exculpatory information that wasn't put in. And what was put in here was pretty substantial from the standpoint of probable cause. That's what needs to be established, not certainty, but probable cause. And, you know, they had this undifferentiated mailing address, as we know. They have undivided utility address billing. They have undivided cable bills and everything. They don't have separate mailboxes. All of those were perfectly true that he represented to the magistrate judge. And didn't they establish probable cause here, especially given the fact that the things you think should have been in, which is the interviews of the two children, one hadn't lived in the house in a long time. This was after their mother was indicted. They were instructed, in one case, not to speak to the officer. And he'd already talked to them. And they said, but parents live in a common area. Your Honor, the court found that there was a material omission and that it was made with reckless disregard. The question before this court is whether the court proceeded properly after that. Can I ask you, because I think there's a sense in which this is a little bit related. Putting, I guess, under materiality, which you're right, that's given all of the true information in the affidavit that suggested they were living there together, given all of the true allegations of the affidavit, even if you add in, even if you do the kind of adding in the way you want to, you only add in the exculpatory sentences. They had the separate bedrooms. And you don't put in the context. I mean, might that still not add up to probable cause? I don't know if that's exactly the question my colleague had, but it seems very closely related. So the problem is, is if you add in the statement that there was evidence suggesting that Mr. Wharton resided in the basement and Mrs. Wharton occupied the upper two floors, all that's left is the statement that the Whartons said that they had been married for 43 years and there were some combined electric and cable bills. Well, they were jointly interviewed at the house. Well, that information was not actually included in the warrant. It's the information about that they were interviewed together at the dining room is not included in the search warrant affidavit. This is the other thing. You say, well, shouldn't leave it to the judgment of the, you should leave it all to the judgment of the magistrate judge. And I'm, you know, I'm sympathetic to that basic point, but at the same time, the officer who writes the affidavit is entitled to exercise some judgment in what's included and what's omitted. There are always things that are included and there are always going to be some things that are omitted. And what was included was highly probative information. And what was omitted was a combination of exculpatory information, which I don't have inculpatory information, um, which would have only added to, um, what was done. And these, I always thought that Franks was primarily directed toward the situation that false information was included. But when you get to the point that, you know, we're going to have a, uh, and, and find error with respect to omitted information, um, that can be litigated in, in every case. Well, Your Honor, there is a substantial showing that individuals have to make. And if you look at the case in this court's decision in Tate and there, the facts contained in the affidavit were literally true, but they were misleading because they failed to, to, to mention the fact that they only got access to the trash by committing trespass. Here, Agent Gray created the misleading appearance that their, that the Whartons together occupied the entire residence. And he had to. But, but, but, sorry. I totally agree with you that this affidavit does create the appearance that they occupy, occupy the residence together. And to my eye, I see what you mean. It doesn't say they interviewed them together in the dining room, but it does say they interviewed them together in the house. And it's unlikely it would have been in one of the two bedrooms since they were together. Can you talk just a little louder? I'm sorry. I'm losing your voice. Sorry, sorry. So the affidavit does not say they interviewed them together in the dining room, but it does say they interviewed them together in the house. And I just think that you are right, that when you look at this affidavit through a combination of true statements, it creates a very strong impression that they live together in that house. And that even if you add in, well, but one of the kids who hasn't been there in a long time says they have separate bedrooms, there's still probably probable cause to search at least the common areas. I mean, even two adults living together in a house who have separate bedrooms, there's going to be a lot of mixing of items. So the, the problem is, is that when you, what the court did was, was by creating this reconstructed affidavit by selecting some of the information, including information that was not even known to Agent Gray at the time. No, but we're taking you back to look at the actual affidavit that was, that was submitted. Submitted. Well, the problem is, is because we know that the information was, was, was made, that was, that was misleading, I don't think we can rely on just the warrant. And if we're going to say, okay, the common areas would include the first floor, that doesn't get us to the second floor, which is precisely why these facts should be presented to the magistrate judge in the first instance. But there's nothing in the evidence that was presented and nothing in the evidence that the judge added would get, that would get them to the second floor. Excuse me. I come back to the point, if all of this, the interviews and the separate, the undifferentiated address, a lot of times if you have a duplex or something, you can have, you know, 1915 A or 1915 B, or you have separate mailboxes. And then the, the income tax returns, utility bills, cable bills, they hold themselves out as a joint couple. And then you say, that perfectly true information is not sufficient. They've got to go farther. Then what you're asking is that the officers at the investigatory stage, at the investigatory stage, go into the interior of a family relationship and tear up that family's privacy. And when there's a perfectly reasonable presumption that people who've been married 43 years together and are still living together under the same roof, and the officer, as Judge Harris points out, interviews them under that very same roof, there's a presumption, which is, in a court, that's what probable cause is, is a very, very reasonable presumption, that people who are living under the same roof and they're married, that they both have access to common, to the common living areas. Your Honor, I see my time is up. May I answer the question? Can I have a couple of questions? Yes, you can answer and then I have a couple of questions. Let Judge Maza ask her question. I'm sorry, if I could just, thank you, Judge Maza. So the reason that the district court found that Agent Gray acted with reckless disregard was not because he failed to investigate additional information and pry into a family's marital relationship. The reason it was made with reckless disregard is because he had information at the time he drafted that affidavit from the two adult children, from the two grandchildren who had resided in that house for years, that indicated that they were living separately under the same roof. These were two witnesses that testified under oath and that they were otherwise relying on to file their superseding complaint. This was not evidence that was speculative. This wasn't evidence that they had to ferret out afterwards. This is information that was known to the agent and he did not disclose to the magistrate. We've seen other affidavits and cases over the years and this one is a pretty decent one. It's not the greatest, no, when you can always pick at it, but as the Supreme Court's told us not to do. But this one in the mine run of affidavits, it's a pretty decent one. And if we hold that it's inadequate on the basis of somewhat iffy facts or I'll quote facts unquote, that's going to chase officers away from utilizing it. But anyway, Judge Motz had a question for you. I do. You had said at the beginning, you told me what was on the first floor and what was on the second floor and it wasn't . . . First of all, I can't find where you say it in your brief, so say it again. I'll assume that you're correct, but I will ferret out to see if there is proof in the record for what you say. I mean, I'm talking about the actual rooms. Yes. So there was, during the two days of testimony, there was evidence about the following rooms on the first floor, meaning the ground floor, not the basement. There was a kitchen and there was a dining room and there was specific testimony about at least those two rooms. And whose bedroom is there? There are no bedrooms on the ground floor. Okay. On the second floor of the house, there is Mrs. Wharton's bedroom. There is a second bedroom that had been occupied by the granddaughters. And again, this was testified to in the motions hearing and in office. What you were talking about earlier was, I guess, the basement, where Mr. Wharton has a separate entrance where his bed is. Correct. So that the common areas . . . let's leave aside whatever the affidavit says. But what you and I would think of as common areas, living room, kitchen, are all on one floor with no bedrooms. That's correct, Your Honor. So anybody wants to use the kitchen in that house or go upstairs and socialize at Christmas time, they're going to the first floor of the house. That's correct, Your Honor. And this is . . . Those common areas. That's correct. And this was part of the problem in reconstructing the affidavit, because the only evidence that the court relied on, which was an evidence, again, that was known to Agent Gray at the time he drafted the affidavit, was an inference that Mr. Wharton must have used the shower on second floor because that was the only shower in the house. Witnesses did not actually testify to that. But that was her inference. There was a reference in your brief about the district court, I think it was in your brief, maybe it was in the government's, being preoccupied with Mr. Wharton going to the shower, which I really think is unnecessary. Whoever said it, don't do that again. I apologize. I certainly was not intending no disrespect to the district court who was trying to . . . So I think to get to try to figure . . . They tried to get this right. Yes. But unfortunately, the standard when we're in a Frank's omission world is not to figure out what the truth actually was. The point is to figure out what was known to the agent at the time and what was included in the affidavit. Getting away from the facts, I'm going back to the law for a minute. I have read all the cases that you cited and all the cases that the government cited, and I have not found a case where the defendant in the Frank's hearing points to additional evidence and the district court, yes, changes the affidavit to take account of that evidence, but then looks at other evidence that the defendant has pointed to and reads the affidavit with that evidence in it. Have you found such a case? Well, I . . . You talked about going beyond what the defendant proposes, but that's not what the district court did here. She didn't go to evidence other than evidence that you had pointed to. I don't mean you, you, but the defendant. Well, Your Honor, I respectfully disagree. I think the court actually did go beyond what the defendant submitted, but the real issue . . . Well, we can find . . . You know, you talked about early in this whole dialogue that we've had here, you actually attached interview notes or depositions or whatever they were with the children that was the evidence that you now say she shouldn't have looked at. Your Honor, we are not suggesting that the court should not have looked at it. We submitted that because we had to make a substantial preliminary sharing that we were entitled to a Frank's hearing, and that was certainly all relevant to whether Agent Gray acted . . . She only allowed to look at the first sentence and not at the sentence after. No, Your Honor. All that information was fair game for purposes of whether Agent Gray acted with reckless disregard. And we made this objection in the hearing that all this testimony about what Agent Gray knew at the time he submitted the affidavit . . . She is reconstructing the affidavit. It put in the omissions. Why couldn't she put that in if you had introduced it, if you pointed to it? Because, again, I don't think the standard is who submits it. I think the standard is you're correcting the material omission. And what does that mean? Now, that arguably . . . I mean, I think that is a large part of all these cases you rely on. And I think we have a very recent case from late last spring agreeing with you that the point of a Frank's hearing is not to find out what is the truth of the matter. And for that reason, the government is not allowed to come in and put in a lot of evidence that they should have submitted to the magistrate but didn't. The government doesn't get two chances to make its case. That seems to be the principle of those cases. But I guess I agree with my colleague. That principle, at least, is not implicated here. So what's the problem with letting the magistrate judge when she has to reconstruct . . . or letting the district court judge when the warrant has to be kind of reconstructed to include the omitted information to give that information some context? Is there any other area where we would say you have to pay a lot of attention to the precise weight and value of this information, but you may not put it in context? What these children meant by my kids have separate rooms, you're not allowed to look at that. It's just the words. They had separate rooms. If they clarify that what they meant by that is they have separate rooms but they share common space, you can't look at that. That just seems like such an unnatural way to think about the weight of evidence. No, Your Honor, and I don't think that we're advocating for such a rigid rule. Okay, how not? The problem is that the district court not just expanded to provide context but actually supplied information that was not included in the affidavit and some of which I don't believe Agent Gray had access to at the time of the affidavit. So you're not objecting. Let me . . . because if we can get this clear, this would be really helpful. You are not objecting to the fact that the magistrate considered the other sentences that the children said in describing the living arrangement. That's fine. Well, Your Honor, the problem is and the reason why decisions like the Seventh Circuit and Reinholtz and the district court in Gaines found, the reason when you start getting into reconstructing an affidavit from two days of messy testimony when it's unclear what the agent knew and didn't know, that you're . . . Let me just give you one example. So it says, I asked if his parents were living together. I think this is LaShawn Morton stated that they live in the same house, but from what he can tell, his mother sleeps in the bedroom, his dad sleeps in the basement. You want that in. The next sentence is, I asked if there was a separate apartment in the basement and he said they share a kitchen in common areas. Can that come in? Your Honor, whether that precise sentence comes in, I don't think changes the analysis here. I do. That's mostly what the district court was relying on. That sentence and a sentence like it, which I can't find sitting here from the grand jury testimony, where the same witness who's saying they have separate bedrooms clarifies what they mean about their living arrangement. The problem is, though, is that that was not the only other evidence. So say, fine, this stuff comes in. What else did she use that she shouldn't have? Well, it's not just what she used and what she shouldn't have. There was also LaShawn Morton, just focusing on LaShawn Morton for a second. There was also evidence that he said that his father had a separate apartment, which of course would address the shower question, and that he only cooked in the kitchen during family events. So because the court is deciding how to characterize the facts that are put in, this reconstructed affidavit, and then she was deciding, okay, if I were reviewing this reconstructed affidavit, how would I evaluate probable cause? And the essence of the Franks violation is that there was an omission made that kept the magistrate judge from assessing whether there was probable cause to search the first and second floor. Now, the exact words that Judge Hollander, she could have said, well, he should have disclosed the fact that there was a dispute about the occupancy. And then Magistrate Judge Gallagher in the first instance could have said, well, tell me more. And perhaps at the end of the day, the search warrant would have been granted for the first floor. But the problem is, is because there was a defective warrant, we shouldn't be in the business of rewriting the warrant. Because what we... But that argument goes too far for you because you want part of it to be reworked. I mean, you don't want, you say that there are omissions. So the case law is that, okay, we put in the things that are omitted. So it has to be rewritten in this case, right? Yes. But the essence of the omission is that the Wharton's, there was ample evidence suggesting that the Wharton's occupied different portions of the house. Maybe the essence of it was that she, that he never went to her bedroom. Well, Your Honor, that... Because you prevailed on that, right? Yes, Your Honor. But that wasn't the actual, the evidence that was available to Agent Gray at the time. And in effect, if the courts, if the district courts are allowed to reconstruct affidavits based on facts that are developed afterward, this is creating essentially a backdoor good faith exception in the case of Frank's violation. Okay. But again, I think this is part of what my colleagues are driving at. If you can't reconstruct affidavits, doesn't that mean you can't pile inculpatory evidence, which an officer later discovered, but you also can't pile on exculpatory evidence? I mean, it seems to me the essence of the whole Frank's violation is that you look at what was submitted at the time it was submitted and what evidence was in the office's knowledge and possession as of that time. That's correct, Your Honor. And unfortunately, there was information that was added that was not known to Agent Gray at the time, such as where the showers were located. I see I've gone way over my time, so thank you. Nancy? Good afternoon, Your Honors. Paul Nitz on behalf of the United States. May it please the Court. The standard that's elucidated in Frank v. Delaware is essentially a standard that's truth-seeking. And in this case, when the Court is faced with an appeal that implicates the material omission prong of Frank's, the Court, both the district court and now this panel on appeal, needs to take note of all of the facts that were brought into the record at the Frank's hearing and then resolve the question of whether those facts, both facts which are favorable to the government and facts which are unfavorable to the government, still provide for an affidavit that has probable cause, that creates at least a fair probability that the items that are sought in the search warrant affidavit will be found at the premises to be searched. The facts elucidated at the Frank's hearing would have to be facts that were known to the officer at the time that the affidavit was submitted, correct? That's right. I would caveat that, and I'll caveat it in a moment. But that's essentially correct, Your Honor, which is that only facts known to the government at the time that the affidavit was sworn out are relevant to materiality, to whether — What exception is there to that? Well — You're going to caveat it right now. Absolutely. The caveat, Your Honor, is with respect to the officer's intent. I believe that facts that come out — that facts that were not known at the time the affidavit was sworn but which come out later can go to the intent and essentially the mental state of the officer. Specifically, the — All right. But, I mean, your brief seems to indicate, look, we're just going to stand very simply on the fact that there was no Frank's violation here, that there was no knowing falsehood, that you can't find a reckless disregard of truth. He said, given all these facts that were included, you may say, well, maybe the officer should have included fact A, B, or C. But you still — that still doesn't get you to the point that you can say that the officer acted with a reckless disregard of truth, which is the lesser of the — the even if there was no knowing falsehood, you still have to have a reckless disregard of truth. And using that standard, given everything that the officer had included here and what he knew at the time, you can't say the man or the woman or whoever submitted the affidavit acted with a reckless disregard of truth. Well, that's — There's nothing reckless about it. Well, that's absolutely one of the points of the government advances in its brief. But we go further than that. We say that even if this Court were to find that Judge Hollander was correct in finding Where is that in your brief? I thought that that argument was noticeably absent in your brief. So I'm interested in that. Well, I would have thought that maybe the government would wrap itself around Judge Hollander's — because that's the only issue that's on appeal here, Judge Hollander's rationale. But no, I didn't see that at all. So tell me what pages we — what I've missed here. Well, this is that the district court was correct with respect to not going into her bedroom, but that the district court erred with respect to — I mean, the district court was correct in finding that there was a violation, and so stopping them from going into her bedroom, but — and saying that there was a Franks violation with respect to it, but not with respect to the other evidence. Where's that argument? Oh, I may have — Your Honor may have mischaracterized my prior point. I don't — I'm not here to tell this Court that our brief supports Judge Hollander's findings with respect to a disregard for entry into the bedroom, but no disregard with respect to entry into other parts of the house. That's the case we have in front of us. So you're not espousing what Judge Hollander — you're not relying on what she did at all? Well, I — if I may — That's what I'm trying to figure out. If I may, Your Honor, we believe that Judge Hollander was — that there was legal error in Judge Hollander's ruling that only evidence from the upstairs bedroom should be suppressed. We're not aware of any precedent that provides for suppression of evidence from one room of a house that is not subdivided or in any way sort of formally delimited. We don't believe — we believe that issues of access and control are determinative as to the scope, but — If you conclude she did not err with respect to the single bedroom, then I don't see any alternative argument in your brief about why we should say she did not err going the other way. In other words, if both rulings are correct, give me your argument. Do you have one? Yes. Any — Well, why didn't you make it in your brief, then? Well, I think it — and perhaps this is not obvious, but it's certainly clearer to me that any error that Judge Hollander engaged in with respect to the scope of her suppression ruling was in favor of Defendant Joanne Wharton. And so this Court — But she didn't do it. She said that this affidavit was incomplete. She added to it. And now the question they're saying was she didn't add enough. And you say, well, she was just wrong altogether. So you don't ever reach their argument. No. Even — even if — even if Judge Hollander's conclusions of both fact and law are correct, Defendant Joanne Wharton still loses because she's arguing that — that Judge Hollander didn't go far enough. She is not — she's not only disputing the — the Judge Hollander's legal conclusions, but also her factual determinations, which, of course — She's not disputing the factual conclusion with respect to the — to the lady's bedroom. But you are. Well, this presents a sort of odd scenario because, of course, the evidence that was at the heart of the government's affidavit was found in her bedroom. OK. But the — the issue is whether you could add to the search warrant or not. Right. That's the essential issue. That is the — She said you could. She — she said — And with respect to one of those additions, they — they got what they wanted. And then they went further. Then she went further and said, but I put all this other evidence in. And so you won't come to grips with what she did, which was to say that since the affidavit was incorrect to begin with, I can add in this bit. And then they say, but it's improper to put in this other bit. And you won't come to grips with that. Well, let me — let me give it a shot, Your Honor. OK. I'm — all ears. As I — as I read Judge Hollander's memorandum opinion, she says that she needs not reach the scope of the material emission prong with respect to what may be added back in. She said, I don't need to reach this issue. She said that for me, I can deny the defendant's motion just by using the material that the defendant brought in at the hearing. Right. But she didn't — she never reached the issue of whether that was all that could be brought in. But can I suggest to you — I totally agree. She's — she's not reaching the question of can the government put in new evidence at the Franks hearing. But — right. So that — because you guys are arguing not only are you not limited in sort of how much of the defendant's information you can put in, we can also put in — bring to light new evidence the government may put forward, new evidence at the Franks hearing, and that should also be factored in. And she says, I don't have to reach that because I'm not doing that here. But my understanding is that since the district court ruled, we held in the Lull case that, in fact, the government cannot put in new information at the Franks hearing. So that's all done. Well, and, Your Honor, I — and respectfully, I — Judge Harris, I disagree with your reading of the Lull in that respect. The critical language in Lull is in one of the footnotes, and I don't have the footnote in front of me, but the text of that footnote reads in part that when dealing with a material omission, it is, quote, critical to understand the broader circumstances in which an affidavit was drafted. You don't have the rest of the footnote, the part where they say the government can't put in new information at the Franks hearing? Because I don't either. I didn't think we were going to have this dispute about how the footnote goes on. And, Your Honor, I don't have Lull in front of me. I'm more than happy to file a supplemental letter on that and to include all of the relevant language from Lull. But if I could just to back up a moment and ask the panel to engage in a small thought exercise, which is that a material omission, as both, I believe, Judges Wilkinson and Judge Harris suggested earlier, a material omission can be categorized in innumerable ways. Just with respect to the Tasha Muriel grand jury testimony alone, one could say that the material omission was that her parents occupied separate quarters within the house. One could say that her material omission was that they occupied separate quarters, but she had barely been to the house in three or four years. One could say that the material omission was that they occupied separate quarters, she had barely been to the house, and they shared common living areas from time to time. And my point is simply that it's very important that the government and the defendant be able to bring out all of the relevant context at the Franks hearing. And just to take one example, the... You know, I don't understand. It seems to me you're making this more complicated than it need be. I don't understand why you wouldn't simply say that the district court reached the right result, but we don't necessarily agree with the reasoning. Because it seems to me that a Franks hearing, it ought to be limited to what was known to the affiant at the time. Completely agree. You can bring in facts beyond the affidavit. You can bring in inculpatory facts beyond the affidavit. You can bring in exculpatory facts beyond the affidavit. But the one proviso has to be that they were in circulation or they were available or known to the officer at the time. So is there evidence in this record that the facts that they wanted to have the affidavit to be amended to contain were not known to the officer at the time that he executed the affidavit? I didn't see that. So I'm interested to where that would be in the record. Well, there is one important dispute there. And I don't want to take up too much time with it. But there is an important dispute about the granddaughters. The two granddaughters, Essence and Shakira Wharton, they testified at the Franks hearing. And they stated that in a June, I believe a June 3rd interview with Agent Gray, where Agent Gray was asking them questions about when they left their grandparents' care, that the granddaughters told Agent Gray, that they told him that their parents didn't live together in the house. And Agent Gray testified at the same hearing. And this is at pages 572 to 76 of the adjoined appendix. Agent Gray testified that he never talked to them about that subject. And so our position is that we, the government, did not know this information that the granddaughters provided about corroborating the separate apartment theory, that we were well aware of the LaShawn Wharton statements, well aware of the Tasha Muriel statements, but that we did not know about this information from the granddaughters, and that we learned of it for the first time at the Franks hearing. Because what happened was at the Franks hearing, or just prior, the defense provided the government with these statements. We're not looking here at a Franks hearing about some negligent omission or what have you. You've got, I thought your position was, given all that was disclosed here, you can't say that that rises to the level of a reckless disregard of truth. That's right, Your Honor. And also that even if it met that prong, that it was not material, that the inclusion of the information would not vitiate probable cause. And just to return to Your Honor's point, just prior, all we are asking for is that all of the facts known to Agent Gray... Because it seems to me, again, that Judge Hollander eventually struck the right balance and reached the right result here, which was to exclude the information from the bedroom and say, look, there may have been some estrangement there and there was maybe a material omission about that. But that as to the common areas, she says, I'm going to let it in. And although we got off on this whole reconstruction point and the rest, which I think goes against what our case law indicates, it was a commonsensical, good disposition of it to keep the master bedroom stuff out and to let the common areas, let that come in. Simply because to sort of strip your position down in a mathematic where there's no false information at all, and there's a good bit of information included here. It isn't a... There's not... This officer, whatever he did, didn't engage in reckless disregard of truth. Your Honor, I have no complaint with that resolution by this panel, to the extent that the court affirms Judge Hollander's... I'm sure you don't. The thing, though, our hardest thing is not coming to the bottom line, but how an opinion writes. And that's why I was trying to get you to talk to me about the circumstances that we find ourselves in this case that I didn't find in any of the cases that you cite or they cite. And that's where you have had a conclusion that there's been a material omission. You've recast the affidavit, which I think is what our case law says. You put back the facts that should have been in. Okay? So you've done that. And then there is a determination that in finding these new facts that were known to the agent at the time, the defendant offered some other facts. And is the district court supposed to look at those other facts, too? Or is the district court not supposed to look at those other facts? And that's what I was hoping you could illuminate for me. Well, I'm not aware of any precedent in this circuit in which this pattern has come up. And we cited to Raja Rotnum. None of those cases involve this situation. No, they don't. And these are strange facts, Your Honor. I concede that. We cited to case law from other circuits, including the Raja Rotnum case from the Second Circuit, in which the text of that opinion suggests that you add back in all of the information that comes out at the Franks hearing that was known at the time the affidavit was sworn. That is the dividing line. I'm sorry, but I did find the language from Lowell. And Lowell says that in evaluating if probable cause would have existed if the omitted statements had been included, we do not consider any additional facts the affiant, that's the government in this case, testified to during the suppression hearing. So whatever is going on in the Second Circuit, I feel like this is what I think is going on in this case. You tell me if I'm wrong. You guys had a broader position than the one adopted by the district court below, which is when you do this reconstruction, you may bring in not only everything the defendant presents, but also everything the government presents, so long as they knew it when they swore out the affidavit, even though they didn't include it. Just assume with me for a minute that I don't think that position survives Lowell. And that's fine. Lowell postdates the argument. So now we are in this position where, at best for you, on materiality, we're going to include not only the precise exculpatory sentences, but maybe some other inculpatory am I getting this backwards, some other information that came out that the defendant offered. It's not new stuff that the government put in. So that's where I think we are. And, Your Honor, certainly I don't believe that it's appropriate for the defense to do either of these things, either to introduce evidence as an exhibit to its briefing at the Franks hearing, and then later ask this Court to cabin its consideration of those very exhibits that they introduced. Nor do I believe that there's any precedent in this Court that would strip statements that would allow for or require a court to strip statements from their context. And in her memorandum opinion, Judge Hollander refers to the rule of completeness, and that certainly applies here, which is that just that, you know, a complete reading of the statements of both of the adult children is that there were shared common areas. And those must, they were offered by the defense as exhibits, and they must be part of the record and be subject to consideration by the district court. And I would just, you know, briefly just hit a couple of other points, Your Honor. Understandably, the defendant wishes to cast this as a question about whether there was probable cause that these two individuals lived in the house together or lived in separate apartments. The standard before this Court is to assess whether there was probable cause that the items in the search warrant would be found at the house. And this is where issues of access and control are important. But another issue which I haven't touched on is important, which is that there was evidence that came out that was available to Agent Gray at the time, which was known to the government, that documents that were relevant to the affidavit were received in the single mailbox and were also in Joanne Wharton's possession. There was evidence that she cashed multiple checks in his second false identity into her own account. So even if these apartments were split, then the agent was still justified in seeking evidence of them from all parts of the house because there was good evidence that the mail came into one place. And she kept some of these responsive documents. That documents relating to Mr. Wharton would be found throughout the house. That's exactly right. And that's the issue, is was there a fair probability that documents that the government sought in this warrant... You're saying that that's the case even if they didn't share the master bedroom? Right. That's the case just on the basis of the single mailbox and the fact that the government... This is actually how the government found out about the second identity. Where does the probable cause... I mean, you're saying that the facts that were included in the affidavit were all that was needed to indicate that the documents relating to him would be found in this residence? Right. And just... Are you saying that it's immaterial that whether they shared the same bedrooms or not? I'm saying that it is immaterial to the probable cause determination that, of course, we believe they shared the house, but it's immaterial because of the fact that those documents came to that house. It's going to be found where he lives. It's going to be found where he lives and where the documents were delivered. And the affidavit, just the text of the affidavit, says that his benefit correspondence in the false name, his bank records from Citibank, and his employment correspondence at Uptown Press, that all of those had a mailing address of the undivided Utrecht Road residence. What the children testified to is not material because whether they live together... You're saying whether he had access to the areas or whether he didn't have access to the areas, that the evidence was still in that abode? Right, that the court need not rely on that. The evidence wouldn't be in that part of the abode, right? Well, it must have transited because it came into that mailbox, which was on the ground floor. It's a mail slot? No, it's a small metal mailbox. I believe you can see it in one of the photos from page 875 in sequence. But the basic point is the evidence is going to be found where he lives. Where he lives and where documents that are relevant are delivered and kept. I see that I've used up my time. Thank you very much, Your Honors. Unless the court has any further questions? Mr. Elzig? Thank you. I wanted to very briefly touch on two points because I'm afraid I didn't make myself clear before. There are two separate issues that we are advancing. Number one, the court's additions to the search warrant affidavit. We have an initial objection to because number one, we don't think it was a fair distillation of the evidence that came out during the hearing. But if the court is not persuaded by that, then we think that even if this court thinks that the additions were appropriate based on everything that the judge heard, that still would not give probable cause for anything more than the first floor. The testimony, and I wanted to give the court a couple of citations from the record and from our brief. What are the additions over and above the additions that she did make? Well, because you wanted those additions, right? The ones that got her not into, that she found that Frank's hearing was, that Frank's was violated with respect to going into the bedroom, right? Well, Your Honor, I mean, our position actually at the motions hearing was that they shouldn't go beyond the basement with respect to documents for John Wharton. And again, our position is that we submitted information to make our threshold Frank showing. But I can see that the court is not feeling persuaded by the court not being able to rely on defense submissions for all purposes. So I wanted to move on to a secondary point that even if the court's... And I'm talking about the two. I thought that you wanted her to put back in to the affidavit two things. Am I in error there? Your Honor, what... I thought you said that the affidavit was insufficient and you needed to put two things back in. So help me here. Our position is that the material omission was that the Whartons occupied different portions of the house. That was the material omission. That's what was withheld from the magistrate. Now, I can... I wonder about that point because there are just an awful lot of searches. Somebody's engaged in all kinds of criminal activity. And it's very rare... It's very common that one is a common occupant of any kind of house with other people. And we don't ask officers to sort out, well, this member of the family had access to this. So who... This member of the family had access to that. But the actual living arrangements aren't crucial here, at least with respect to the common areas. And so I'm just not... The whole question is, where are you likely to find the information in the place? And what counsel says, you're likely to find the information where he lives continuously at the place where these documents were delivered. I don't know where he's hidden the information. I don't know where he stashed it. But it's likely to be found in this home, in this house. Now, you can carry that principle too far, I think. If there is a private bedroom and the agent learns about it. Although I'm not... It's hard to say because you may establish a sanctuary for this sort of evidence in a private bedroom of somebody else. What I'm saying is, I'm not sure that... I'm not sure that the whole case bottoms out on the very particularized question about who had access to which rooms on which floor. And what it bottoms out as is, were they likely to find information relating to his fraud at the house where he lives and where the mail is delivered? And yes, Your Honor, and I think if I could just address a point that I think is on the minds of all of the panel. When the court heard testimony, there was indication that Mr. Wharton had some access to the first floor. There was testimony that he would occasionally use the kitchen when there were family get-togethers. There was testimony that that would then allow him access to the dining room, again, for family get-togethers. But that's it. There was no indication from these two days of testimony from the occupants of the house that Mr. Wharton was ever seen on the upstairs of the house. And I wanted to refer the court to pages 37 and 38 of our brief, to pages 11, 63 and 64 in the joint appendix from the court's decision, addressing what evidence was before the court with respect to who had access to which portions of the house. If there are no more questions, thank you. I'm going to adjourn court and come down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Pamela A. Harris